**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **TCF Inventory Finance, Inc.,** | ) | **CASE NO. 1: 11 CV 85** |
| | ) | |
| Plaintiff, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **Northshore Outdoor, Inc.,** *et al.*, | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendants. | ) | |

Pending before the Court is Plaintiff's Motion *In Limine* and For Sanctions (Doc. 34). Plaintiff TCF Inventory Finance, Inc. (TCF) moves, pursuant to Fed. R. Civ. P. 37(c)(1) and 56(h), to exclude from trial certain items of damages defendants claim in their Counterclaim and for sanctions against defendants. Defendants Northshore Outdoor, Inc. (Northshore) and Dawn M. Allen and Kristopher S. Allen (Dawn and Kris Allen) oppose plaintiff's motion. For the reasons stated below, the motion is granted in part and denied in part.

**Background**

The background facts of the case have been more fully set forth by the Court in its previous Memorandum of Opinion and Order addressing plaintiff's motion for summary

1

judgment.  Briefly, the case involves an alleged breach of a Wholesale Security Agreement (Agreement) entered into by TCF and Northshore on October 22, 2002.  Pursuant to the Agreement, TCF financed Cub Cadet brand inventory manufactured by MTD Consumer Group, Inc. (MTD) for Northshore to sell at its Ashtabula, Ohio store.  Northshore was obligated to repay TCF for financed inventory that was "sold."  Dawn and Kris Allen personally guaranteed Northshore's obligations under the Agreement.

In 2010, TCF took the position that Northshore was not paying for all "sold" inventory as required by the Agreement.  As a result, TCF issued default letters to Northshore in October, 2010.  Northshore disputed that it had failed to pay TCF for "sold" inventory as contractually required.  However, Northshore decided to close and sell its retail store in October 2010 because of the problems it was having with TCF which Northshore contends caused it to experience credit and inventory problems.  Northshore's plan was to close the store for the winter and try to sell the store in the spring to an interested purchaser.

TCF discovered that Northshore had closed its store in November 1, 2010, when Scott Mercurio, TCF's inspector, arrived at the store to conduct an inventory inspection.  Upon learning that the store was closed (which constituted a separate event of default under the Agreement), TCF made arrangements to have financed inventory at Northshore repossessed.  Repossession of inventory subsequently occurred.

Following repossession, TCF sent Northshore a new notice of default demanding payment for financed inventory that TCF determined it was not able to repossess at the store and for interest and other charges.  TCF also demanded payment from Kris and Dawn Allen as guarantors.

2

TCF was able to resell the bulk of the inventory it repossessed in private sales but contends a deficiency balance exists. TCF initiated this action against Northshore and Dawn and Kris Allen in their capacity as guarantors to recover amounts allegedly owed under the Agreement. Count I alleges that Northshore breached the Agreement by failing to pay TCF for "sold" inventory. Counts II and III are claims against Dawn and Kris Allen as guarantors of Northshore's payment obligation under the Agreement. TCF seeks to recover from Northshore the outstanding principal amounts due for financed inventory plus interest and other charges, as well as TCF's attorneys' fees and costs.

Defendants denied Northshore's allegations and asserted a Counterclaim against TCF. Count One of the Counterclaim alleged that TCF breached the Security Agreement by repossessing the Cub Cadet equipment without a contractual basis for doing so. TCF was granted summary judgment on this count. Count Two of the Counterclaim alleges a claim against TCF for tortious interference with Northshore's business contracts and relationships. Count Three alleges that TCF breached the terms of the Guaranty by declaring a default when no default occurred. In their Counterclaim, defendants seek "compensatory damages in an amount not yet ascertained but to be proven at trial, prejudgment interest, attorney fees, punitive damages, and for such additional legal or equitable relief that this Court deems just and proper."

**Discussion**

TCF moves to preclude defendants from introducing certain damage information at trial on the basis that defendants did not properly disclose the information to TCF during discovery and for sanctions against defendants for making misrepresentations regarding

3

financed inventory during depositions and in affidavits.

As to its contention that defendants did not properly disclose damage information, TCF sets forth the following background facts.

Defendants filed their Initial Rule 26 disclosures on April 11, 2011. In their disclosures, defendants stated as follows with regard to their computation of damages:

> Defendants are in the process of computing their damages, which are ongoing. The categories of damages included, however, lost income and profits, future profits, and lost business opportunities; damage to Defendants' personal and professional reputation, and all fees and expenses incurred in responding to Plaintiff's Complaint. This will be supplemented with supporting documentation as damages are calculated.

(TCF Ex. 1.)

On July 6, 2011, TCF served written discovery requests regarding defendants' damages. Interrogatory No. 12 asked defendants to describe with particularity the damages defendants contend they suffered as a result of TCF's breach of the Wholesale Security Agreement. In their August 8, 2011 response, defendants responded:

> By TCFIF's wrongful actions, Northshore was forced to close its business and has lost profits, future income and its loyalty bonus from Cub Cadet. Northshore also was damaged by lost orders and sales at the time it was forced to close. Defendants are in the process of calculating their damages and will supplement.

(TCF Ex. 2.) TCF also asked defendants in the interrogatories to identify each order for equipment defendants had that was allegedly cancelled as a result of TCF's actions. In response to this interrogatory, defendants stated:

> The information can be derived from the business records and documents of Northshore that are being produced in this action, and the burden of deriving or ascertaining the answer to this interrogatory is substantially the same for Plaintiff as it is for Defendants. Accordingly, pursuant to Fed. R. Civ. P. 33(c), Defendants refer Plaintiff to the documents that are being produced in

response to Plaintiff's document requests.

TCF asserts, however, that it "received no documents reflecting alleged damages except three customer contracts that totaled less than $9,000" and that no additional "supplements were received during the discovery period." (Mem. at 5.)  The deadline for discovery in the case was November 11, 2011.

TCF also asserts that it further attempted to explore damages during the discovery period by asking Dawn and Kris Allen questions in depositions taken on October 24, 2011. TCF asserts that, in these depositions, defendants "could not articulate even an estimate of the store's average or typical profit or the amount of any Cub Cadet loyalty bonus" and "indicated that the proposed sale of Northshore had never gone beyond verbal negotiations, that any sale was contingent on approval by Cub Cadet, and that the sale price was for parts, not goodwill." (Mem. at 5.)  In addition, defendants identified only three contracts with Northshore customers and represented that these were the only contracts they contended TCF interfered with and that they had produced all relevant contracts.  (*Id.*)

On February 27, 2012, after the close of discovery and after the Court decided TCF's motion for summary judgment, defendants served a supplement to their answers to TCF's interrogatories.  (TCF Ex. 7.)  In these supplemental answers, defendants assert that:

> Defendant suffered lost profits because they were forced out of business while having to continue to maintain operational costs.  Documents are attached. Furthermore, Defendants had identified a purchaser willing to pay $100,000 for their business.

TCF contends the documents attached to defendants' supplemental response include partial tax returns dating back to 2007, documents regarding customer orders that were not specifically testified to by the Allens in their depositions, and documents as to Northshore's

5

contractual relationship with MTD not previously produced.

TCF contends defendants' initial disclosures and interrogatory responses regarding damages are insufficient because defendants never provided a computation of damages as required by Fed. R. Civ. P. 26(a). In addition, TCF argues that defendants' "attempt to supplement their description of damages suffered as a result of an alleged breach of the Security Agreement by [TCF] and to identify additional contracts with which Defendants contend [TCF] interfered" should be precluded because defendants' supplement "is out of time and fails to provide any information that could not have been produced during the discovery period." (Mem. at 8.)

Fed. R. Civ. P. 26(a)(1)(A)(iii) provides that a party, without awaiting a discovery request, must provide the other parties "a computation of each category of damages claimed by the disclosing party – who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered." Fed. R. Civ. P. 37(c)(1) provides: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or harmless."

TCF takes the position in its motion *in limine* that the Court should issue an order pursuant to Rule 37(c)(1) precluding defendants from presenting evidence at trial as to four categories of damages defendants claim to have suffered as a result of TCF's conduct because defendants did not provide a "computation" of these damages as Rule 26 requires.

6

First, TCF argues that defendants did not timely disclose or provide a proper supplement containing a computation of "lost profits" as required by Rule 26(a); therefore, defendants should be precluded from putting on evidence or relying on documents purporting to establish "lost profits" at trial, including the tax returns attached to defendants' untimely supplemental interrogatory response.  Although defendants do not specifically address lost profits in their opposition brief, they contend that their late production of the tax returns and other materials was harmless (and therefore does not meet the requirements for exclusion under Fed. R. Civ. P. 37(c)(1)) as Dawn Allen referenced the tax returns in her deposition, and TCF did not follow up with any request for the returns.  Further, defendants assert that TCF contends the tax returns actually support its position that Northshore's business was not successfully performing and that the tax returns are irrelevant in any case.

TCF's motion *in limine* is granted insofar as it seeks to preclude defendants from presenting damage evidence as to "lost profits."  As TCF demonstrates, defendants did not provide TCF with a computation of alleged lost profits in their initial Rule 26 disclosures.  Further, defendants did not subsequently otherwise make clear to TCF in a timely discovery response a "computation" of their alleged lost profits.  Dawn Allen merely testified in her deposition that defendants lost profits.  This is insufficient to notify TCF of a "computation" of lost profits as Rule 26 requires.  The materials defendants submit in their supplemental production are not only untimely but also do not demonstrate a computation of defendants' alleged lost profits.  As TCF argues, defendants cannot demonstrate lost profits simply by asserting that they were forced out of business while having to continue to maintain operational costs and by attaching tax returns and other documents that on their face do not

7

itemize or make clear the "profits" defendants allegedly lost.  In sum, defendants failed to provide TCF a computation of lost profits in discovery as Rule 26 requires.  Accordingly, defendants are precluded from introducing evidence of lost profits at trial, including the tax returns and other documents provided with defendants' supplemental interrogatory response. *See, e.g., Bessemer & Lake Erie Railroad Co. v. Seaway Marine Transport*, 596 F.3d 357, (6th Cir. 2010) (affirming this Court's decision to exclude evidence of lost profits pursuant to Fed. R. Civ. P. 26(a) where the plaintiff's disclosures failed to adequately provide a computation for plaintiff's lost profits claim).

Second, TCF argues that defendants failed to provide any specific information or documentation in discovery regarding defendants' alleged loss of a "Cub Cadet loyalty bonus"; therefore, defendants should not be permitted to present evidence of a "lost bonus" at trial.  Defendants, however, contend evidence of the Cub Cadet loyalty bonus was provided in discovery.  Specifically, they assert that Harry Mayes, the Cub Cadet dealer who was deposed by TCF, testified that defendants would have received a bonus between $20,000 and $25,000.  (Opp. at 4-5.)  The Court agrees with defendants that TCF was provided with sufficient information in discovery to inform TCF of a computation of damages for a lost loyalty bonus from Cub Cadet.  Therefore, TCF's motion *in limine* is denied as to this category of damage.

Third, TCF argues that defendants should be precluded from presenting damage evidence of a loss of "other business opportunities," including evidence that a purchaser was willing to pay $100,000 for defendants' business.  TCF argues that defendants provided "no details or documents" to TCF in discovery regarding such an alleged loss despite TCF's request that defendants' damages be described with particularity.  Defendants contend in their

8

opposition brief that Dawn and Kris Allen testified in their depositions that defendants reached a verbal agreement with a "Mr. Barnum" in October 2010 to sell defendants' business for a negotiated price of $100,000. Defendants argue they should not be precluded from presenting evidence as to this lost business opportunity simply because TCF did not receive more "detailed information" in discovery. The Court agrees with defendants. Sufficient evidence was disclosed in discovery before the discovery cutoff to adequately notify TCF of a computation of this category of damage.[1]

Finally, TCF argues defendants should be precluded from contending at trial that TCF interfered with "customer orders" or business relationships other than the three customer orders related to customers Chip Ashcraft, Gordon Swan, and Matt Demshar totaling approximately $9,000 that the Allens specifically testified to in their depositions. In that defendants do not state or take the position in their opposition brief that they seek to rely on evidence of any other lost customer order or business relationship, TCF's motion is denied as to this issue.

TCF contends in its motion that defendants should be precluded from relying on any document at trial as to any category of damage that was not provided by defendants to TCF before the November 11, 2011 discovery cutoff. The Court will not address such a generalized argument. This ruling resolves only the specific arguments TCF makes as to specific categories of damages addressed.

In sum, the Court rules as follows as to TCF's motion *in limine*. Defendants are

---

[1] TCF's motion *in limine* is premised on the requirements of Rule 26(a), not the rules of evidence. Therefore, it is not necessary to determine the admissibility of defendants' evidence at this juncture.

9

precluded from introducing evidence at trial of "lost profits" because defendants provided inadequate information in discovery to establish a computation of lost profits. However, the Court will not preclude defendants from presenting damage evidence at trial as to defendants' asserted lost ability to obtain a loyalty bonus from Cub Cadet, defendants' asserted lost business opportunity to sell their business to Mr. Barnum for $100,000, and defendants' asserted loss of the three customer contracts the Allens specifically testified to in their depositions.

TCF also moves for sanctions against defendants pursuant to Fed. R. Civ. P. 56(h) on the basis that defendants submitted affidavits to the Court in bad faith in opposing TCF's motion for summary judgment. Rule 56(h) provides:

> If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court– after notice and a reasonable time to respond – may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

TCF asserts that, while defendants represented at depositions and in affidavits that Northshore did not keep any financed inventory, defendants revealed after the close of discovery at the February 29, 2012 settlement conference that they are in fact presently storing some financed inventory. TCF contends defendants' conduct is sanctionable under Rule 56(h) and asks the Court to sanction defendants "for their misrepresentations in both deposition testimony and summary judgment affidavits by dismissing Defendants' remaining counterclaims, and awarding [TCF] its attorneys' fees incurred in connection with this motion." (Mem. at 14.)

Defendants deny that the affidavits of Dawn and Casey Allen on summary judgment were made in bad faith. They contend that they only discovered they were storing a small

amount of financed inventory shortly before February 29, 2012, when Northshore's former landlord contacted Kris Allen and advised him that he needed to clean out the building. In support of this, defendants submit an email from defendants' counsel to plaintiff's counsel dated April 2, 2012, disclosing that four items of financed inventory totaling an invoice amount of $2700 were found at Northshore when Northshore inventoried material in the storage containers. (Def. Ex. D.) However, defendants assert that, at the time Dawn and Casey Allen made the affidavits on summary judgment, they believed their statements about the inventory to be accurate; therefore, sanctions under Rule 56 are not warranted.[2]

TCF's motion for sanctions pursuant to Fed. R. Civ. P. 56(h) is denied. As noted above, Rule 56(h) provides that "[i]f satisfied that an affidavit . . . under [Rule 56] is submitted in bad faith or solely for delay, the court . . . may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result" as well as impose other sanctions. Courts have found "bad faith" in the context of Rule 56 only "where affidavits contained perjurious or blatantly false allegations or omitted facts concerning issues central to the resolution of the case." *Sutton v. U.S. Small Bus. Adm.*, 92 Fed. Appx. 112, 118 (6th Cir. 2003). Sanctions under Rule 56 are "rare" and the conduct involved must be "egregious." *Abdelkhaleq v. Precision Door of Akron*, 653 F. Supp.2d 773 (N.D. Ohio 2009).

Although it appears that the affidavits defendants submitted in opposition to TCF's motion for summary judgment – stating that all inventory financed by TCF was repossessed –

---

[2] TCF contends in its reply brief that defendants' explanation in their opposition brief is not credible and that defendants did not support the assertions they make in their opposition brief with sworn affidavits.

were not accurate and defendants now admit that there were four items of financed inventory that remained in the possession of Northshore, the evidence before the Court is not sufficient for the Court to conclude that defendants' affidavits on summary judgment were made in "bad faith" in the context of Rule 56(h).  Accordingly, the Court declines to award sanctions under Rule 56.

### Conclusion

For the reasons stated above, TCF's motion is granted in part and denied in part. TCF's motion *in limine* is granted to the extent it seeks to preclude defendants from introducing damage evidence of lost profits at trial because defendants did not adequately disclose to TCF in discovery a computation of their alleged lost profits.  Defendants are not precluded, however, from introducing the following damage evidence at trial:  evidence as to a lost loyalty bonus from Cub Cadet, evidence of a lost opportunity to sell defendants' business to Mr. Barnum for $100,000, and evidence as to the three lost customers orders discussed in the Allens' depositions.

TCF's motion for sanctions pursuant to Fed. R. Civ. P. 56(h) is denied.[3]

IT IS SO ORDERED.

 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 7/3/12

---

[3] In their opposition brief, defendants assert that they should be awarded their attorney's fees and costs in responding to TCF's "frivolous" motion. The Court does not find the motion "frivolous." Defendants' request for fees and costs is denied.